# BANK OF KENTUCKY v. COMMONWEALTH OF KENTUCKY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 87.   Argued October 23, 1907.—Decided December 2, 1907.

A municipal corporation is not necessarily bound by the decree in a suit against another municipality because officers of the State were parties thereto.

The relation of the state board of valuation to the counties and other municipalities is a matter of state regulation.

In Kentucky, neither a sheriff, nor assessor, nor the board of valuation has control of the fiscal affairs of the county and a judgment against them does not bind the county.

A judgment against a county of Kentucky and the members of the state board of valuation restraining the collection of taxes of that county as impairing the obligation of a contract created by a law of the State and within the protection of the Federal Constitution is not, because such state officers were parties, res judicata as to the validity of taxes imposed by another county, nor is such other county privy to the judgment.

It is competent for the legislature of a State to change the day that a bank shall report its property for assessment and to provide that the lien of the assessment shall follow the property in the hands of a vendee.

94 S. W. Rep. 620, affirmed.

THE facts, which involve the liability of certain banks in Kentucky to be assessed for back taxes under the revenue law of the State of Kentucky, are stated in the opinion.

*Mr. Alexander P. Humphrey* for plaintiffs in error:

This court has finally determined, in a case of similar import, that the thing established by the Federal decree was the binding and conclusive character of the contract embodied in the Hewitt law and its acceptance. *Deposit Bank* v. *Frankfort*, 191 U. S. 499 (514).   See also dissenting opinion in same case.

This court has therefore decided the proposition that under the Hewitt law the Bank of Kentucky had a valid and binding contract which the Commonwealth of Kentucky could not alter or change, and that by the terms of that contract the property

of the Bank of Kentucky and its shares of stock could not, during its corporate existence, be assessed for taxation for state purposes in a different mode or at a greater rate of taxation than is prescribed in said act, and could be assessed for taxation and taxed for county and municipal purposes only upon its real estate used by it in conducting its business.

It is further expressly decided that the provisions of the present constitution of the Commonwealth of Kentucky and the act of November 11, 1892, in so far as they were intended to provide or did provide any assessment for taxation of the property of the Bank of Kentucky, its rights of property or franchise or shares of stock, except to the extent and in the manner provided by §§ 1, 2 and 3 of Article II of the Hewitt law, and except to assess a tax for county and municipal purposes upon its real estate used in conducting its business, are in violation of, and repugnant to, the Federal Constitution and void.

Property is always required to be assessed as of a certain date. *Commonwealth* v. *Riley's Curators*, 24 Ky. Law Rep. 2006; *Baldwin* v. *Shine*, 84 Kentucky, 507; *Wangler* v. *Black Hawk Co.*, 56 Iowa, 384; *S. C.*, 9 N. W. Rep. 314; *Coal Co.* v. *Porth*, 63 Wisconsin, 77; *S. C.*, 23 N. W. Rep. 105; *Southern Ins. Co.* v. *Board of Assessors*, 49 La. Ann. 401; *S. C.*, 21 So. Rep. 913.

A proceeding under § 4221 of the Kentucky Statutes is in plain contradiction of the decree of the Federal court and breaks down the contract which that decree establishes as having been made by the Bank of Kentucky.

The county of Jefferson was clearly bound by the decree of the Federal court, as privy thereto, and has no stronger case than the Bank of Kentucky.

There was no lien on the assets of the Bank of Kentucky when they were acquired by the National Bank of Kentucky.

Until assessment day it cannot be known what property exists subject to assessment, or against whom the assessment is to be made. There may be an inchoate lien after assessment day and before an actual assessment. But there can be no

inchoate lien prior to assessment day. If the day of assessment had arrived then it was the duty of the Bank of Kentucky to report its property subject to assessment and pay the taxes. If the day of assessment had not arrived, it was not the duty of the Bank of Kentucky to report or pay, and there could be no lien for taxes. The report to be made under the Hewitt law was to be made as of July 1. The condition of the bank then governed the assessment. What assets it had on the preceding 15th of September or December 31 was entirely immaterial.·

The property owned by the taxpayer upon the assessment day must necessarily govern his assessment. If he parts with his property before assessment day, he cannot be liable for the taxes, nor can there be any lien for the taxes.

· *Mr. Henry Lane Stone,* with whom *Mr. Samuel B. Kirby* was on the brief, for defendant in error:

The plea of *res judicata* as to the Jefferson county taxes is totally inapplicable, and the demurrer thereto, as well as to the whole answer of plaintiffs in error was properly sustained. § 4241, Kentucky Statutes (Carroll's Compilation, 1903); *Bank of Kentucky et al.* v. *Commonwealth of Kentucky,* 29 Ky. Law Rep. 643; *Bank of Kentucky* v. *Stone et al.,* 88 Fed. Rep. 383, 386; *Stone, Auditor &c.* v. *Bank of Kentucky* and *City of Louisville* v. *Same,* 174 U. S. 799; § 51, Civil Code of Kentucky; *Northern Bank* v. *Stone et al.,* 88 Fed. Rep. 413, 418; *Farmers' Bank of Kentucky* v. *Stone et al.,* 88 Fed. Rep. 987; aff'd 174 U. S. 409; *Joyes* v. *Jefferson County Fiscal Court,* 106 Kentucky, 615; *County of Henderson* v. *Henderson Bridge Co.,* 116 Kentucky, 164; *Deposit Bank of Frankfort* v. *Frankfort,* 88 Fed. Rep. 986; aff'd 174 U. S. 800; 191 U. S. 499; *Bank Tax Cases,* 97 Kentucky, 590; *Stone* v. *Louisville,* 22 Ky. Law Rep. 423; Equity Rule 48; § 25, Civil Code of Kentucky; *Apsden* v. *Nixon,* 4 How. 467; *Hale* v. *Finch,* 104 U. S. 265; *DuPasseur* v. *Rochereau,* 21 Wall. 130; *Metcalf* v. *Watertown,* 153 U. S. 671; *Hancock National Bank* v. *Farnum,* 167 U. S. 640.

The owner of property located within the State of Kentucky,

by a transfer thereof to another, cannot evade the taxes owing to the State thereon, it being at the time under lien therefor by the express letter of the statute. It is furthermore insisted that, on September 15, 1899, the property and assets of the Bank of Kentucky came under this statutory lien for the amount of taxes levied and fixed by law for state purposes. In other words, the National Bank of Kentucky took the property of the Bank of Kentucky *cum onore*, and this obligation to the State cannot be discharged until the taxes are actually paid for that year. On account of the failure or refusal to pay taxes for the year 1900, under the Hewitt act, the provisions of § 7 became enforcible, and the same rate of taxes must be paid to the State as on assessed taxable property in the hands of individuals, that is to say, under existing laws at the time of such failure or refusal and those laws were embodied in the General Revenue Act of November 11, 1892. *Frankfort* v. *Mason & Foard Co.*, 100 Kentucky, 54; General Statutes of Kentucky, ed. of 1888, pp. 1040, 1041 ; §169, Kentucky Constitution; §§ 4019, 4021, 4023, 4052 and 4092, Kentucky Statutes; Hewitt Act, General Statutes of Kentucky, ed. of 1888, p. 1035; Act approved April 24, 1882, General Statutes of Kentucky, ed. of 1888, p. 652; *Middlesboro* v. *Coal & Iron Bank*, 108 Kentucky, 680; *Commonwealth* v. *Walker*, 25 Ky. Law Rep. 2122; *Bank Tax Cases*, 102 Kentucky, 174; *Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 636.

The judgment of the court below does not violate the National Banking Act. 5 Cyc. of Law and Procedure, p. 574, par. b, note 34, citing numerous authorities, both state and Federal; *Metropolitan National Bank* v. *Claggett*, 141 U. S. 527; *Michigan Insurance Bank* v. *Eldred*, 143 U. S. 293.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case involves the liability of plaintiffs in error, Bank of Kentucky and National Bank of Kentucky, to be assessed for certain back taxes under the revenue law of the State of

Kentucky. That law makes it the duty "of auditor's agents to cause to be listed for taxation all property omitted, or any portion of property omitted by the assessor, board of supervisors, board of valuation and assessment, or railroad commission, for any year or years." § 4241, Ky. Stats. (Carroll's Compilation, 1903).

In pursuance of other provisions of the section this suit was brought. There is no dispute about the facts. The Bank of Kentucky was chartered by the legislature of Kentucky in 1834. Its charter was subsequently twice extended, but was repealed by an act approved March 22, 1900. On that day the National Bank of Kentucky, was organized and took over its assets.

The purpose of the suit is to subject these assets to assessment for taxes for Jefferson county for the years 1898, 1899 and 1899–1900, and for the State for the year 1899–1900. Against the assessment for county taxes plaintiffs in error pleaded a judgment of the Circuit Court of the United States, which, it is contended, established that it had been adjudged that the Bank of Kentucky was only taxable under a law of the State, called the Hewitt law, and that such law constituted an inviolable contract between the bank and the State. And against the state taxes it was urged that the bank had ceased to exist by the repeal of its charter before liability under the Hewitt law attached.

1. By its original charter the Bank of Kentucky was required to pay twenty-five cents on each share of its stock in lieu of all other taxation. By an exercise of a power reserved the legislature increased this to fifty cents. By the Hewitt law it was provided that the banks in the Commonwealth should pay to the State seventy-five cents on each share of their capital stock outstanding, and the ordinary rate of state taxation on the amount of its profits less ten per cent thereof. The tax was to be in lieu of all local taxation, except upon the real estate occupied by the bank for the purpose of its business. It was provided that banks organized prior to its passage might accept

the terms of the law.  If they failed to do so they were to be taxed as other corporations were taxed, and also should be subject to local taxation.  The Bank of Kentucky accepted the terms and paid the taxes required.  In 1891 Kentucky adopted a new constitution, which provided that all property of individuals and corporations should be taxed according to its value.  In 1892, to enforce the provision of the constitution, the legislature passed a general revenue bill.  Under the terms of the bill banks as well as other corporations are subject to taxation, and it is provided that their property at its fair cash value "shall be assessed and valued as of the 15th of September in the year listed, and the person owning or possessing the same on that day shall list it with the assessor, and remain bound for the tax, notwithstanding he may have sold or parted with the same."  Corporations are also required to pay a tax on their franchise to the State and to the locality where the franchise is exercised, to be levied by a board denominated the Board of Valuation and Assessment, constituted of the auditor, treasurer and secretary.  It is the duty of the board to determine the apportionment of the tax where more than one jurisdiction is entitled to a share of the tax and fix the place of its payment. The auditor is chairman of the board, and it is made his duty at the expiration of thirty days after the final determination of such values to certify to the county clerks the amount liable for local tax, who in turn certifies it to the local tax officer.

The judgment relied on as *res judicata* was entered in a suit brought by the Bank of Kentucky in the Circuit Court of the United States for the district of Kentucky, wherein it impleaded Samuel H. Stone as the Auditor of Public Accounts of the State of Kentucky, Charles Fenley as the Secretary of State, and George W. Long as the Treasurer of State, the city of Louisville as a municipal corporation, the county of Franklin as a municipal corporation and the Board of Councilmen of the city of Frankfort as a municipal corporation.

The bill alleged the rights of the bank under the Hewitt law as a contract between it and the State, its exemption from taxa-

tion except under that law, and the invalidity as to it of the act of November 11, 1892. The bill also set forth various litigations which the bank had theretofore conducted, and in which, it insisted, it had been adjudged that it could not be taxed otherwise than under the Hewitt law. And it was alleged that the defendants would proceed to value the franchise of the bank in the manner set forth in the act of November 11 for the years 1895, 1896, and 1897, and certify such value to the clerk of Jefferson county, and that those assessments would be illegal.

The bill prayed that Stone, Fenley and Long be perpetually enjoined from assessing the value of the bank's capital stock under the act of November 11 for the years mentioned; that Stone be enjoined from certifying such valuation to the said several municipalities, and that such municipalities be enjoined and restrained from collecting any tax upon such valuation; that the bank's contract be fully established; that it be declared that, upon conforming to the same by making the payments under the Hewitt law or under its charter, no other or further taxes should be exacted from it under any form or by any authority. Issue was joined and the court decreed, among other things, as follows:

"It is further adjudged, ordered and decreed, by reason of the several pleas of *res judicata*, relied on by complainant in this bill and as shown by the exhibits therewith, complainant has an established contract with the Commonwealth of Kentucky, under the provisions of Article 2 of the act of the General Assembly of the State of Kentucky, entitled 'An act to amend the revenue laws of the Commonwealth of Kentucky,' approved May 17, 1886, and the acceptance of the same by the complainant, the terms of which contract the Commonwealth of Kentucky cannot alter or change without the consent of the complainant; that by the terms of this contract the complainant and its shares of stock cannot during its corporate existence be assessed for taxation for state purposes in a different mode or at a greater rate of taxation than as prescribed in said act, and can be assessed for taxation and taxed for

county and municipal purposes only upon its real estate used by it in conducting its business; that the provisions of the present constitution of the Commonwealth of Kentucky and the act of November 11, 1892, in so far as they are intended to provide or do provide for any assessment or taxation' of the complainant's property, rights of property or franchise or shares of stock, except to the extent and in the manner provided by sections 1, 2 and 3 of Article II of the said act, approved May 17, 1886, and except to assess a tax for county and municipal purposes upon its real estate used in conducting its business, are in violation of and repugnant to the Federal Constitution and void."

It is insisted that this decree "decided that the Bank of Kentucky had a full and binding contract under the Hewitt law—a contract which the Commonwealth of Kentucky could not alter or change," and that by the terms of that contract its property was only subject to taxation under that law. It is further insisted that the extent of the decree is not limited by the reasons given for it, and *Deposit Bank* v. *Frankfort*, 191 U. S. 499, is cited.

The important consideration is, upon whom is the decree binding? Meeting the inquiry, the bank contends "that the county of Jefferson is clearly bound by this decree as privy thereto," notwithstanding it was not a party to the suit in which the decree was rendered, and deduces this from the dependence of the power of the county to collect taxes upon the assessment by the board of valuation of the value of the franchise of the bank and the certification of the proportion thereof that was subject to county taxation. It is hence further deduced that a judgment against the state board of valuation determines the rights of all the local communities claiming under a valuation and apportionment made by the board and the auditor.

The action of the Bank of Kentucky is inconsistent with this contention. In its litigation it made the local communities parties, and in the suit the decree in which is pleaded in

the case at bar as establishing its exemption from taxation, except under the Hewitt law, it secured an injunction against the Board of Valuation and Assessment by reason of a decree obtained against Franklin County in a suit to which the board was not a party. The court decided, and it was required to decide in order to give the bank the benefit of the decree, that the state board of valuation was the agent of the municipalities, county and city, and as a consequence that judgment rendered against the county of Franklin in the courts of the State, adjudging the Hewitt law a contract between the bank and the State, was binding upon the board of valuation. "Nor can there be any doubt," the court said, "that the parties to the former adjudications and this litigation are the same. The real parties in interest in this cause among the defendants are Franklin County, the city of Frankfort, and the city of Louisville. It is for them that the Board of Valuation and Assessment are about to apportion the estimated value of the franchise, and to certify it to them for the collection of taxes. The members of the board of valuation are nothing but their agents created under the law for the purpose of assessing this tax. If the parties in interest in whose favor the tax is to be assessed are bound by prior litigation, certainly the agents acting for them under the law are equally bound. In this light the Board of Valuation and Assessment is in respect to the former judgment privy to the city of Louisville and county of Franklin, and the city of Frankfort." *Bank of Kentucky* v. *Stone,* 88 Fed. Rep. 383, 395. And on account of this agency and consequent privity with those municipalities the board of valuation was enjoined from action against the contract, determined to exist by the judgment set up and to which the board was not a party by name. The reason given for the decision is now opposed by plaintiffs in error and a decree obtained on account of it is asserted to be independent of it. The vicarious character of the board, as declared by the court, is attempted to be put out of view and a decree made against it because, and only because, it was the agent of certain municipalities is

sought to be made an instrument to bind all others without power of question or resistance on their part. This attempt is not justified by *Deposit Bank* v. *Frankfort,* and, as was said by the Circuit Court of Appeals in another case, "would be extending the doctrine of *res judicata* further than any authority will justify." *Northern Bank of Kentucky* v. *Stone,* 88 Fed. Rep. 413, 415.

The Northern Bank of Kentucky had obtained a judgment against Bourbon County and its sheriff, adjudging that under the Hewitt law it had an irrevocable contract, and the bank sought to use the judgment as an estoppel against other counties and municipalities as well as against Bourbon County. It was sustained as to the latter but rejected as to the other municipalities. The argument was that Bourbon County was a municipal corporation under the state government, and that the State was bound by the litigation against it, and therefore every other municipality was bound. The court rejected the contention, making the remarks we have quoted. The relation of the board of valuation to the counties of the State was again decided to be that expressed in *Bank of Kentucky* v. *Stone.* The latter case was affirmed by this court by a division of its members. 174 U. S. 799.

There is another answer to the contention of plaintiffs in error. The relation of the board of valuation to the counties and other municipalities of the State is necessarily a matter of state regulation.

The Court of Appeals of Kentucky in the case at bar, answering the contention based on the effect of the judgment pleaded as *res judicata,* quoted, with approval, the views expressed by the Circuit Court of Appeals of the Sixth Circuit in the *Northern Bank case,* of the relation of the State to its counties and cities, and, pronounced those views conclusive of "the duty of the Bank of Kentucky to pay its taxes for the years in question." And the court applied the doctrine of the case of *Henderson County* v. *Henderson Bridge Co.,* 116 Kentucky, 164, and declared that the question there considered was substantially the

same as involved in the case at bar. Quoting that doctrine, the court said: "A person or municipality is not bound by former litigation, unless it was a party, either actually or by its representative. Under our statute the fiscal court has control of the affairs of the county, and the sheriff is only a tax collector, in no wise a representative of the county in the management of its affairs, and the county is not therefore bound by any adjudication to which it was not a party." In other words, the court held that neither a sheriff nor an assessor had control of the affairs of the county, and a judgment against either did not bind the county. Applying this, the court further said "the board of assessment and valuation did not have control of the fiscal affairs of Jefferson County, and in our opinion the judgment did not bind Jefferson County."

2. To support the contention that there is no liability to the State for the tax of 1900, it is contended that the property of the Bank of Kentucky was only assessable under the Hewitt law, and before the property was required to be returned for assessment under that law the Bank of Kentucky had ceased to exist, and its property passed to the National Bank of Kentucky free from any lien.

A brief recapitulation of the facts will make the contention clear. Under the Hewitt law the stock and assets of banks were ascertained as of July 1, and the tax paid thereon. On May 1, 1900, as we have seen, by not accepting the conditions imposed upon it by the legislature, the charter of the Bank of Kentucky was repealed. On that day the National Bank of Kentucky was organized and the property of the Bank of Kentucky transferred to it. Under the general laws of the State all taxable property was required to be assessed and valued as of the fifteenth of September in the year listed, and the owner or possessor is required to list it with the assessor on that day, and remains bound for the taxes, notwithstanding he may have sold or parted with it. Section 4052. Under the act of 1892, which repealed the Hewitt law, banks were required to make reports on or before the first of March of each year as

of the preceding thirty-first of December. This provision fixed the time the property of banks should be assessed. The Court of Appeals held that this law was applicable to the Bank of Kentucky and fixed a lien on its property, which continued, notwithstanding the repeal of the charter of the bank and the transfer of the property to the National Bank of Kentucky. This result followed, the Court of Appeals further said, even. viewing the Hewitt law as an irrevocable contract. In other words, it was decided that either one or the other of the two dates was the day of assessment and the commencement of the lien. That of December 31, if the Hewitt law should be regarded as repealed by the act of 1892, and the court decided that it was repealed. That of September 15, if the Hewitt law was not repealed, because the provision for the assessment of property as of the fifteenth of September was a part of the law. The court said (94 S. W. Rep. 623):

"If, under the Hewitt law, banks were assessed at the same time the taxes were due and payable, then the assessment did not take place until the day after the close of the fiscal year for which the assessment was made and the taxes were paid. The act does not say that the assessment shall take place on July 1, nor does it say that it is assessed as of that date. The bank is required to make a report and pay on that date. The Hewitt law provides that the holder of the legal title and the holder of the equitable title and the claimant or bailee in possession of the property on the fifteenth of September of the year the assessment is made; shall be liable for the taxes thereon. Hewitt Law, sec. 6, Art. 1, c. 92, Gen. Stats., ed. 1888, p. 1035."

It was further decided that the only right which the bank secured was to pay taxes upon the property as designated by the Hewitt law. "When the right to do this is maintained," the court observed, "every right it [the Bank of Kentucky] had under its irrevocable charter has been respected."

The conclusions of the court are contested by plaintiffs in error, and it is insisted that the day of assessment was not

September 15 or December 31, but July 1, the day the bank was required to make its report, and that a lien for taxes could not attach until that day, and before that day the Bank of Kentucky had ceased to exist. But we have seen that the Court of Appeals of Kentucky, construing the laws of the State, made, the fifteenth of September the day of assessment under the Hewitt law; in other words, distinguished between the day of assessment and the day that bank was required to make its report. We are not prepared to say that the conclusion is not justified. But passing that, we concur with the Court of Appeals of Kentucky that it was competent for the legislature to change the day the bank should report its property for assessment, and that the lien of assessment would follow the property in the possession of its vendee, the National Bank of Kentucky.

*Judgment affirmed.*